IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEVELOPERS SURETY & INDEMNITY COMPANY,** an Iowa corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | 2:06cv590<br>**Electronic Filing** |
| **BLB CONSTRUCTION, INC.,** a Pennsylvania Corporation, **PETER A. CELENDER,** and **LYNN M. CELENDER,** | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION

Plaintiff commenced this action seeking compensation for damages resulting from defendants' default on payment and performance bonds.[1] Presently before the court is plaintiff's motion for summary judgement. For the reasons set forth below, the motion will be granted.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's

---

[1] The bonds were issued on behalf of BLB Construction, Inc., as principal, with Peter and Lynn Celender signing as indemnitors on the bond. They collectively will be referred to as "defendants."

claim.  National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992).

Once that burden has been met, the non-moving party must set forth "specific facts showing that

there is a genuine issue for trial," or the factual record will be taken as presented by the moving

party and judgment will be entered as a matter of law.  Matsushita Electric Industrial Corp. v.

Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in

Matsushita).  An issue is genuine only if the evidence is such that a reasonable jury could return a

verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there

is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  The non-

moving party "must present affirmative evidence in order to defeat a properly supported motion"

and cannot "simply reassert factually unsupported allegations."  Williams v. Borough of West

Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Nor can the opponent "merely rely upon conclusory

allegations in [its] pleadings or in memoranda and briefs."  Harter v. GAF Corp., 967 F.2d 846

(3d Cir. 1992).  Likewise, mere conjecture or speculation by the party resisting summary

judgment will not provide a basis upon which to deny the motion.  Robertson v. Allied Signal,

Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990).  If the non-moving party's evidence merely is

colorable or lacks sufficient probative force summary judgment must be granted.  Anderson, 477

U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362

(3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh

facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the

evidence).

The record as read in the light most favorable to defendants establishes the background

set forth below.  On January 26, 2001, defendants signed an indemnity agreement with the

plaintiff as a precondition for the issuance of surety bonds.  "The indemnity agreement provides

that Defendants shall indemnify [plaintiff] from and against all liability and loss, including, but

not limited to counsel fees and expenses, that [plaintiff]  may incur as a result of issuing surety

bonds on behalf of BLB and/or enforcing [plaintiff's] own rights under the Indemnity Agreement." Plaintiff's Statement of Material Facts (Doc. 23) at ¶ 2: Defendants' Statement of Material Facts (Doc. 24) at ¶ 2. Defendants entered into three separate construction contracts referred to by the parties as the Slippery Rock University project, the Ohio Township project, and the Hawkins Village project. All three projects were ultimately delayed due to the "inferior and/or incomplete work of the subcontractors." Defendants' Statement at ¶ 5.

In January 2002, defendants began experiencing problems with the subcontractors and a co-owner on the Slippery Rock University project which resulted in a significant increase in costs. Thereafter, plaintiff received numerous claims against its bond. Plaintiff sent a letter to defendants inquiring about the lack of payments to one of the subcontractors and requested information in support of the defendants' position that the delay was due to a subcontractor. In response, defendants sent numerous letters detailing the specific problems they were having with the subcontractors. Plaintiff moved forward with the subcontractors' claims and negotiated a settlement on virtually every one, including recovering $49,985.00 of unpaid contract revenue and amounts due from charge orders submitted to the Pennsylvania Department of General Services ("DGS"). Once the claims were settled, plaintiff assumed control over the construction contracts and instructed the DGS to cease all payments to defendants.

On May 16, 2003, defendants notified plaintiff that multiple subcontractors were in default on the Ohio Township project due to incomplete or substandard work. Plaintiff settled the majority of the claims with the subcontractors at a lower price then what they originally demanded. On April 9, 2004, plaintiff received a report from George Coste of the Guardian Group, a surety and construction claims consultant, stating that the cost to complete the project was greater than the remaining contract balance. Following the Guardian report, plaintiff negotiated a full and final release with the owner which provided the owner would complete the project with the remaining contract balance and not seek additional payment from plaintiff. Plaintiff then instructed the subcontractors to stop payments to defendants and eventually

3

recovered $14,654.23 in progress payments which has been credited to the defendants' indebtedness under the Indemnity Agreement.

An outstanding contract balance owed to defendants on the Hawkins Village project existed at the time defendants were no longer able to continue operations on that project due to the lack of funds from the other two projects. Plaintiff satisfied all subcontractor claims arising from defendants' inability to complete the project. Due to the incomplete and substandard work, plaintiff elected not to pursue the outstanding balance given the value of the defective and incomplete work.

Plaintiff's claimed payments and expenses in settling the claims on the Ohio, Slippery Rock, and Hawkins projects total $478,418.24 after a deduction has been made for the loss recovery it received on the Ohio and Slippery Rock projects.

Plaintiff seeks summary judgment on its breach of contract claim and defendants' two counterclaims. Plaintiff contends the record establishes defendants' breach of the indemnity agreement and defendants cannot avail themselves of the "bad faith" defense which they advance. Plaintiff further argues that defendants' first counterclaim for breach of the covenant of good faith and fair dealing fails as a matter of law because plaintiff's alleged conduct does not rise to the level of bad faith. In additional, plaintiff contends summary judgment is proper on defendants' second counterclaim for tortious interference of contract because after defendants' default their interests in the construction contracts were assigned to plaintiff by operation of the Indemnity Agreement.

Defendant maintains that plaintiff's payment of the subcontractor claims was not justified under the circumstances and thus made in "bad faith." Furthermore, plaintiff tortiously interfered with defendants' contract rights when it asserted a right to and obtained the outstanding payments the subcontractors owed to defendants. Finally, plaintiff breached the covenant of good faith and fair dealing by paying unwarranted claims to the subcontractors.

Plaintiff's request for summary judgment on its breach of contract claim is well taken.

Defendants do not contest the indemnity agreement's validity and admit that its express provisions are controlling. Their central position is that "the prima facie evidence" clause in the agreement becomes void if plaintiff acted in bad faith.

It is well established that absent any express standard in an indemnity agreement, a claimant must satisfy the following elements in order to demonstrate that a surety acted in bad faith: 1) the surety lacked a reasonable basis for paying the claims; and 2) the surety knew or recklessly disregarded its lack of a reasonable basis for doing so. U.S. Fidelity & Guar. Co. v. Feibus, 15 F. Supp.2d 579, 584 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir. 1999); see also Klinger v. State Farm Mut. Auto. Ins. Co., 895 F. Supp. 709, 713 (M.D. Pa. 1995) aff'd, 115 F.3d 230 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994) (applying same standard in insurance coverage dispute). A lack of diligence or negligence is not the equivalent of bad faith, and even gross negligence cannot support such a finding. Feibus, 15 F. Supp.2d at 584. Furthermore, the presumption of good faith created by a prima facia evidence clause is designed to promote and facilitate the handling of settlements by sureties and protect them from unnecessary and costly litigation. Id. at 585. Such a presumption is deemed to be appropriate because the expense, delay, trouble, and risk of loss to the surety are recognized as sufficient safeguards against an unwarranted payment. Id.

Defendants argue bad faith can be established because 1) plaintiff ignored defendants' notifications and letters indicating the subcontractors were in default, 2) plaintiff instructed the DGS to stop progress payments on the Slippery Rock project, and 3) plaintiff failed to account for change orders on the Ohio Township and Hawkins Village projects which would have provided substantial funds to complete the projects.

Defendants fail to advance evidence sufficient to raise a genuine issue of material fact on the issue of bad faith. The record clearly indicates that the majority of the claims were settled for amounts substantially below the subcontractors' original demands. See generally Affidavit of Sean Wozney (Doc. 20-4). Plaintiff also obtained a report from George Coste of the Guardian

5

Group, an independent surety and construction claims consultant, which unequivocally presents affirmative evidence of an investigation into the claims made in the Slippery Rock project. The fact that most of the claims were not paid outright raises a circumstantial inference that plaintiff conducted an investigation into the claims against the bond and that a reasonable basis existed for settling the demands.

Having made the above showing, Rule 56(e) obligates defendants to submit affirmative evidence raising a genuine issue of material fact for trial. And in doing so they may not rest upon mere allegations or denials, or point to some metaphysical doubt about the material facts. Matsushita, 475 U.S. at 586. Nor may they advance footless conclusions masquerading as facts. Williams, 891 F.2d at 460; Harter, 967 F.2d at 852.

Defendants advance no probative evidence to rebut plaintiff's supported showing that a reasonable basis for paying the claims existed. Instead, they merely assert that plaintiff could not have believed defendants were liable for the claims because BLB provided documentation outlining the reasons why each subcontractor's claim was disputed. Such an assertion merely highlights what defendants believe a substantive evaluation of the claims should have revealed, and does not undermine in any meaningful way the affirmative evidence in the record indicating plaintiff did conduct an investigation before paying the claims. Consequently, defendants have at best advanced a showing that plaintiff may have been negligent in its investigation, which is woefully short of the quantum of evidence needed to support a finding of bad faith. Feibus, 15 F. Supp.2d at 585 (a lack of diligence or even gross negligence cannot amount to bad faith).

Similarly, defendants' assertion that plaintiff acted in bad faith because they did not settle the claims in the Hawkins Village project and failed to demand the contract balance does not present sufficient evidence to raise an issue of genuine material fact. Plaintiff justifies the failure to pursue the balance based on the value of the defective and incomplete work, having concluded that it was cheaper to pay the balance then to fix and/or complete the work. Affidavit of Sean Wozney at ¶ 14. The burden thus shifts to defendants to present sufficient evidence to create a

material issue of fact. Defendants merely note that one of the subcontractors did not complete its work and claim a lack of knowledge concerning the foundational premises of plaintiff's supported position. Having advanced no evidence to the contrary, defendants have not satisfied the first prong of bad faith test and summary judgment must be granted.

Defendants likewise have not advanced sufficient evidence to support their counterclaim for tortious interference. Under Pennsylvania law, a party can recover for tortious interference by demonstrating 1) the existence of a contractual relationship, 2) an intent to harm by interfering with that contractual relationship, 3) the absence of any privilege or justification, and 4) damages from the interference. Hennesy v. Santiago, 708 A.2d 1269, 1278 (Pa. Super. 1998).

Defendants claim plaintiff never officially declared them in default with the DGS and yet told the subcontractors to stop making progress payments to defendants even though the work was substantially complete. Upon default all of the defendants' interest in a contract is assigned to plaintiff. Indemnity Agreement at ¶¶ 7.1 & 7.3. Once defendants stopped making payments to the subcontractors and plaintiff became obligated to pay the demands against the bond, plaintiff became entitled to release defendants from their bond obligations notwithstanding that much of the work had been completed. Id. at ¶ 7 generally. Plaintiff thus obtained contractual rights to take over the contracts and was entitled to the progress payments. In other words, plaintiff had justification for interfering with defendants' contracts. Accordingly, defendants' tortious interference claim fails as a matter of law.

Finally, defendants' strained attempt to circumvent the well established standard for assessing a bad faith defense on a breach of surety contract claim is unavailing. Defendants essentially seek to bypass this standard by affirmatively asserting a contract claim for breach of the covenant of good faith and fair dealing. But the contract imposes well-recognized and straightforward obligations on the surety's adjustment of claims against the bond, and, as previously explained, defendants have failed to offer sufficient evidence to rebut the inference that plaintiff conducted an investigation and paid out the claims in accordance with their merits

and any potential defenses. These legal and factual shortcomings are fatal to defendants' breach of contract counterclaim.

For the reasons set forth below, plaintiff's motion for summary judgement will be granted. An appropriate order will follow.

<u>Date: August 11, 2008</u>

                                       <u>s/ David Stewart Cercone</u>
                                       David Stewart Cercone
                                       United States District Judge

cc:    W. Alan Torrance, Jr., Esquire
        Dickie, McCamey & Chilcote
        Two PPG Place
        Suite 400
        Pittsburgh, PA 15222-5402

        Richard J. Cromer, Esquire
        Leech Fishman Fuscaldo & Lampl
        Citizens Bank Building, 30th Floor
        525 William Penn Place
        Pittsburgh, PA 15219